## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY CODADA, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GRACE ADULT DAY HEALTH | : | No. 13-2003 |
| CARE INC., and TATIANA MATSVEYEVA. | : | |
| | : | |

Norma L. Shapiro, J.                                                          March 12, 2014


### MEMORANDUM

Defendants, Grace Adult Day Health Care Inc. ("Grace") and Tatiana Matsveyeva ("Matsveyeva"), have moved for summary judgment on the claims of plaintiff, Harry Codada ("Codada"). There are disputes of material facts, so defendants' motion will be denied.

### I.      BACKGROUND

Codada is a black male of Haitian descent. Grace is a provider of day services to the elderly. Codada worked as a driver for Grace for approximately five years until July 17, 2012, when his employment was terminated. As a driver, Codada's primary responsibility was picking up clients from home in the morning, bringing them to Grace, and returning them in the afternoon. During the day, Codada engaged in activities with the clients or had other duties. In early 2010, Matsveyeva became Codada's supervisor. Sometime in 2010, Codada ceased engaging in activities with clients during the day and his sole job responsibility became driving clients to and from Grace. Throughout 2010, Codada received less and less overtime and he received none in 2011. Codada felt these changes were unfair and he was being discriminated against because of his race and ethnicity. On June 6, 2011, Matsveyeva, meeting with Codada, gave him a written warning purportedly disciplining him for tardiness. During the

-1-

meeting, Codada contended he had not been late and expressed to Matsveyeva his feeling he was being unfairly discriminated against because of his race.

Around July 2011, Codada's hours were decreased from approximately eight to six hours per day. On September 19, 2011, Codada contacted the Equal Employment Opportunity Commission ("EEOC"). His intake forms alleged race and national origin discrimination and retaliation. He specifically alleged Matsveyeva kept him for several hours after work during the meeting on June 6, 2011, while his family was waiting for him. He also alleged Matsveyeva reduced his hours in July 2011 in retaliation for his complaints of unfair and discriminatory treatment during the June 6 meeting.

On September 21, 2011, the EEOC sent Grace a notice informing it Codada had initiated a complaint against it. The letter stated no further action was necessary at that time. Matsveyeva received the notification and took no further action.

After notifying the EEOC, Codada alleges he was subjected to an increasingly hostile environment. Codada contends his co-workers openly made discriminatory comments about his race and ethnicity, including referring to him as a "monkey" in front of clients and co-workers, calling Haitians "dirty" and "poor," and saying to him God painted him and "forgot to remove the paint."

On April 3, 2012, Matsveyeva requested a gas receipt from Codada. Grace's drivers were not generally required to provide gas receipts. On April 9, 2012, Matsveyeva told Codada he needed to undergo a federal criminal background check. Other drivers were not required to undergo a mid-employment background check. On April 11, 2012, Codada filed an EEOC formal charge of discrimination alleging race and national origin discrimination and retaliation.

Throughout this time period, Codada felt Matsveyeva's behavior toward him was demeaning and disrespectful. Codada contends she refused to acknowledge him when he said good morning to her. When Matsveyeva was near, Codada noticed his co-workers would not speak with him; Codada attributed this

to instructions from Matsveyeva. When Codada attempted to complain to Matsveyeva about his treatment or his working conditions, he was told to leave her office. According to Codada, Matsveyeva called him into her office on multiple occasions in May and June 2012, asked him why he still worked at Grace, and encouraged him to find another job.

On July 16, 2012, Matsveyeva issued Codada a written warning for clocking in before his scheduled start time. Codada insisted his transportation manager, Jose Santiago, had given him permission to start and end his shift approximately a half hour earlier to accommodate Codada's family responsibilities. Matsveyeva called Mr. Santiago into the meeting. Mr. Santiago denied giving Codada permission to change his schedule. On July 17, 2012, Matsveyeva terminated Codada's employment.

In September 2012, Codada went a third time to the EEOC and filed a second charge of discrimination. On April 15, 2013, after exhausting administrative remedies, Codada initiated this action.

Codada brings claims of race and national origin discrimination and retaliation under 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981, and 42 Pa. Cons. Stat. § 951 *et seq.* ("PHRA"). The elements for proving discrimination or retaliation under § 1981 and the PHRA are essentially the same as under Title VII. They will be treated as identical for the purposes of this analysis.

## II.    LEGAL STANDARD

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences drawn in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The movant must identify those portions of the record showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute is "genuine" only if there is "sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.    DISCUSSION**

    **A.    Hostile Work Environment**

A plaintiff must establish five elements under the totality of the circumstances to prove a hostile work environment claim:  (1) he suffered intentional discrimination on account of his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person in the plaintiff's position; and (5) the existence of *respondeat superior*.  *See West v. Phila. Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995) (abrogated in part on other grounds by *Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S. 101 (2002)).  Grace and Matsveyeva argue Codada cannot show he suffered intentional discrimination on account of his race or national origin or any discrimination was pervasive or regular enough to be actionable.

The facts surrounding the alleged incidents of discrimination are highly contested.  Codada testified he was the object of derogatory comments concerning his race and Haitian nationality.  He stated Matsveyeva accused him of stealing gas when she required a receipt in April 2012 and forced him to undergo a mid-employment criminal background check not required of any other employee.  Codada has offered evidence Matsveyeva treated white Russian and Hispanic drivers more favorably than non-white, non-Russian and non-Hispanic drivers. Grace and Matsveyeva deny any employees made derogatory statements toward Codada.  Matsveyeva denies accusing Codada of stealing gas and defendants have presented evidence that at least one white Hispanic driver received a written warning for taking gas for personal use.  Grace and Matsveyeva do not deny Codada was the only employee who underwent a mid-employment criminal background investigation, but contend it was required by a Pennsylvania regulatory

agency because Codada (and only Codada) had not met certain residency requirements at the time he was hired. Grace and Matsveyeva contend no employees were treated more favorably on account of their race or national origin. These factual disputes preclude summary judgment on Codada's hostile work environment claim.

Grace argues Codada cannot establish liability against or recover damages from it on his hostile work environment claim because he failed to avail himself of Grace's internal mechanisms for preventing discrimination. *See Burlington Indus., Inc v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). This affirmative defense is available when "no tangible employment action" has been taken. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08.[1] The parties contest whether preventative and curative mechanisms were available to Codada and if he reasonably attempted to use them. Grace and Matsveyeva have not shown as a matter of law Grace is entitled to summary judgment on its purported affirmative defense.

### B.    Discrimination

Federal employment discrimination actions are subject to the burden-shifting test articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell*, 411 U.S. at 802. The burden then shifts to the defendant to articulate some "legitimate, non-discriminatory reason" for the alleged adverse action. *Id.* Finally, the burden shifts back to the plaintiff to show defendant's proffered reason is in fact pretext for discrimination. *Id.* at 804.

To establish a *prima facie* showing of discrimination under Title VII, § 1981, or the PHRA, the plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position he held;

---

[1] It is undisputed Codada suffered from a decrease in scheduled work hours and his employment ended in termination, so this defense may not be available to Grace. *See Ellerth*, 524 U.S. at 761 (defining tangible employment actions); *Faragher*, 524 U.S. at 790 (same). Codada has not contested Grace's right to assert the defense.

(3) he suffered an adverse employment action; and (4) the adverse action took place under conditions giving rise to an inference of discrimination. *See, e.g.*, *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

Grace and Matsveyeva only dispute whether the termination of Codada's employment took place under conditions giving rise to an inference of discrimination. Grace and Matsveyeva argue the conditions do not give rise to an inference of discrimination because: (1) Codada was not replaced by an employee of a different race; (2) Codada cannot show other similarly situated employees outside of his protected class(es) were treated more favorably; and (3) Codada's contentions he was the object of racial epithets are uncorroborated "stray remarks."

Codada responds no one was hired to directly replace him, but Matsveyeva testified his job responsibilities were given to a white driver of Tajikstani origin. Deponent witnesses testified to a general sense Russian employees (or Russian-speaking employees) were treated more favorably than non-Russian employees and Hispanic employees were treated more favorably than black employees. At least one former co-worker noted Matsveyeva chastised Codada for speaking Haitian Creole with clients. Another former employee testified about a white Russian driver known for drinking before his shift who continued to be employed after being involved in a car accident. Viewing this evidence in the light most favorable to Codada, he has made a *prima facie* case of race and national origin discrimination.

Grace and Matsveyeva maintain Codada's employment was terminated because he clocked in before the start of his shift without authorization. Failing to adhere to an employer's schedule is a legitimate, non-discriminatory cause for termination.

There is a factual dispute regarding whether Codada can show pretext. "In order to show pretext, a plaintiff must submit evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would

allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2009). Pretext and a plaintiff's *prima facie* case for discrimination often overlap. *Id.* In addition to presenting conditions supporting an inference of discrimination, Codada averred he received authorization to clock in before his scheduled 8:30 a.m. shift. Grace and Matsveyeva contend Codada never received permission to change his schedule. Whether Codada received permission to alter his work schedule is an issue of fact for the jury.

## C.   Retaliation

In order to establish a *prima facie* case of retaliation, a plaintiff needs to show that: (1) he engaged in a protected activity; (2) the adverse action by the employer was taken contemporaneously with or after the plaintiff engaged in the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *See, e.g.*, *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). Grace and Matsveyeva contest whether Codada can show the first and third elements.

The contention Codada did not engage in a protected activity is frivolous. It is undisputed Codada objected to his treatment and accused Matsveyeva of discriminatory treatment on account of his race at the June 6, 2011, meeting. It is undisputed Codada visited the EEOC and complained of discrimination in September 2011.[2] It is also undisputed Codada filed a charge of discrimination with the EEOC in April 2012. All of these could be considered protected activities.

The relatively long lapse of time between Codada's alleged protected activities (June 2011, September 2011, and April 2012) and his termination (July 2012) does not lead to a *per se* inference Codada's termination was causally connected to his protected conduct, but this is not dispositive. *See, e.g.*,

---

[2] Codada did not file a formal "charge" of discrimination at this time, but he filled out intake forms. Contacting the EEOC and filling out government agency intake forms alleging discrimination is a protected activity.

*Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (acknowledging "temporal proximity" and "pattern[s] of antagonism" are "not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference"). "[C]ausation, not temporal proximity itself is an element of plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Id.* at 178.

Codada testified to a general environment of hostility and discrimination beginning when Matsveyeva became his supervisor and increasing after he voiced his opposition to his treatment around June 2011 and contacted the EEOC in September 2011 and April 2012. Codada has also identified several adverse actions with temporal proximity to his protected conduct. Approximately one month after the June 6, 2011, meeting when he complained to Matsveyeva of discriminatory treatment, Codada's hours were reduced from eight to six. Grace and Matsveyeva deny any connection between the decrease in Codada's hours and his complaints of alleged discrimination. Codada's employment was terminated about three months after he filed a charge of discrimination at the EEOC. Grace and Matsveyeva maintain there was a legitimate reason for firing Codada and no one at Grace was aware of Codada's April 2012 EEOC complaint until after his termination. There are triable issues of fact whether there was a causal connection between Codada's activities and the adverse employment actions.

**D.      Matsveyeva's Individual Liability under § 1981 and the PHRA**

Grace and Matsveyeva contend Codada has not offered any evidence Matsveyeva directly discriminated against him on account of his race, so she cannot be held personally liable under § 1981 or the PHRA. Codada has produced evidence Matsveyeva treated other employees outside his protected class more favorably than he. He has produced evidence Matsveyeva refused to engage in conversations with

him or treat him respectfully and she chastised him for speaking in Haitian Creole.   There is a dispute whether Matsveyeva was directly engaged in discrimination against Codada.

Grace and Matsveyeva contend Matsveyeva cannot be held liable under the PHRA because she was not specifically named in Codada's administrative complaints with the EEOC.   Codada does not dispute Matsveyeva was not individually named in the EEOC complaint.   Under the PHRA, a plaintiff must exhaust his or her administrative remedies to preserve claims against an individual defendant.   The plaintiff can name the individual formally in the caption of his or her administrative complaint or informally in the body of the charge.   *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 398-99 (E.D. Pa. 2002).   Codada individually named Matsveyeva on his September 2011 intake form, alleging she committed discriminatory conduct, and the form was provided to Grace and Matsveyeva at the same time as the formal EEOC charge.   Matsveyeva received sufficient notice her "conduct [was] under formal review." *Id.* at 398.   Codada's individual claims against Matsveyeva under the PHRA may move forward.

## IV.   CONCLUSION

There are factual disputes precluding the court from issuing summary judgment.   Defendants' motion will be **DENIED**.   An appropriate order follows.